FILED

2022 Mar-25  PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| KALAINE ASEME, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-00989-SGC |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Kalaine Aseme, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Doc. 1).[2] Aseme timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be reversed and remanded for further proceedings.

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 19).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF document management system and appear in the following format: (Doc. __ at __). Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear in the following format: (Tr. at __).

## I.      Procedural History

Aseme was about 23 years old at the time of her alleged disability onset. (Tr. at 144). She graduated high school, has one year of college education, and has past relevant work as a cashier checker. (Tr. at 42, 172). Aseme filed her applications for DIB and SSI on May 15, 2017, alleging she became disabled on April 2, 2017, due to bipolar disorder. (Tr. at 144, 171).

Aseme's claim was denied, and she requested a hearing before an administrative law judge ("ALJ"). (Tr. at 75, 85). Following the April 3, 2019, hearing, the ALJ denied Aseme's claim. (Tr. at 23). After the Appeals Council denied review of the ALJ's decision (Tr. at 1), that decision became the final decision of the Commissioner. *See Fry v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Aseme filed this action. (Doc. 1).

## II.     Statutory and Regulatory Framework, and the ALJ's Evaluation

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Furthermore, a claimant must show she was disabled between her

alleged onset disability date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(i) and (b). At the first step, the ALJ determined Aseme met the SSA's insured status requirements through September 30, 2022. (Tr. at 17). She further determined that, even though Aseme had worked after the alleged disability onset date of April 2, 2017, this work activity did not rise to the level of substantial gainful activity. (Tr. at 17-18).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at §

404.1520(a)(4)(ii) and (c). At the second step, the ALJ determined Aseme has the following severe impairments: bipolar disorder, with psychosis. (20 C.F.R §§ 404.1520(c) and 416.920(c)); (Tr. at 18).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Aseme does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (Tr. at 18). While the ALJ determined Aseme's impairments were not severe, she did find Aseme was moderately limited in: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. (Tr. at 18-19).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e). At the fourth step, the Commissioner will compare an assessment of

4

the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e). If the claimant can perform past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(iv).

If the claimant is not capable of performing her past relevant work, the Commissioner will determine whether the claimant can perform other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1).

Before proceeding to the fourth step, the ALJ found that Aseme's impairments could reasonably be expected to cause some of her alleged symptoms but Aseme's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 20). The ALJ determined Aseme had the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no climbing of ladders, ropes, or scaffolds; no work around unprotected heights or hazardous machinery. The claimant is limited to unskilled work activity with the ability to attend and concentrate for 2-hour periods, and with no more than occasional

workplace changes. She has to [sic] ability to make simple, work-related decisions that is goal oriented, but is precluded from production or assembly pace work. She can perform work where contact with the general public is not an essential part of job duties, and can perform independent work that does not require teamwork or coordination of others.

(Tr. at 19).

At the fourth step, the ALJ concluded Aseme is unable to perform any past relevant work. (Tr. at 22). Proceeding to the final step, the ALJ found Aseme was a "younger individual" on the alleged onset date, with at least a high school education and the ability to communicate in English. (Tr. at 22). Transferability of job skills was not material to the disability determination because the Medical-Vocational rules supported a finding that Aseme was not disabled, whether or not she had transferable job skills. (*Id.*). Relying on testimony from a vocational expert ("VE"), the ALJ determined that a significant number of jobs exist in the national economy for an individual with Aseme's age, education, work experience, and RFC. (*Id.* at 23). Based on this evidence, the ALJ ultimately concluded Aseme was not disabled and was not entitled to benefits. (*Id.*).

## III.    Standard of Review

A district court's role in reviewing claims brought under the Social Security Act is narrow. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone*

*v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is

7

supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

Finally, the harmless error doctrine applies to the review of an ALJ's decision. *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1008 (11th Cir. 2020) (citing *Diorio v. Heckler*, 721 F.2d 726 (11th Cir. 1983)).

## IV.  Discussion

Aseme challenges the substance of the ALJ's finding for two main reasons.[3] First, she argues the ALJ did not clearly articulate good cause for giving less weight

---

[3] Aseme also argues the ALJ's decision is constitutionally defective because the ALJ was appointed by a commissioner who enjoyed tenure protection, which has since been ruled unconstitutional. (Doc. 21 at 7-11). Because the ALJ's opinion is due to be reversed and remanded on other grounds, the court declines to address this argument; however, many courts to address this issue outside the context of a motion to dismiss have found it unpersuasive. *See, e.g., Rives v. Comm'r of Soc. Sec.*, No. 1:20CV2549, 2022 WL 681273 (N.D. Ohio March 8, 2022); *Vickery v.*

to the opinion of Aseme's treating physician, Dr. Karen Callahan, than to the opinions of the non-examining record reviewer, Dr. Teresa Moran, and the consultive examiner, Dr. Brian McFarland. She complains the reason provided by the ALJ for assigning partial weight to Dr. Callahan's opinion—that Aseme's severe symptoms improved with medication compliance—cannot constitute good cause because Dr. Callahan's notes do not provide different limitations when Aseme was compliant with her medication.

Second, Aseme complains the RFC did not incorporate all limitations afforded by Dr. Moran and Dr. McFarland, even though the ALJ found Dr. McFarland's opinion persuasive.[4] In particular, Aseme asserts the ALJ did not incorporate Dr. Moran's opinion that Aseme be limited to short, simple instructions and tasks, that Aseme have limited interactions with supervisors, or that Aseme would likely miss 1-2 days a month because of her bipolar disorder. Aseme also argues the ALJ did not incorporate Dr. McFarland's opinion that she had a limited ability to interact with supervisors.

---

*Comm'r of Soc. Sec.*, No. 5:21-cv-122-PRL, 2022 WL 252464 (M.D. Fla. Jan. 27, 2022); *Benavidez v. Kijakazi*, No. CV 20-990 SCY, 2021 WL 6062715 (D.N.M. Dec. 22, 2021); *Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-CV-872-SPC-MRM, 2021 WL 6297530 (M.D. Fla. Dec. 21, 2021), *report and recommendation adopted,* No. 2:20-CV-872-SPC-MRM, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022).

[4] The ALJ did not describe the persuasiveness of Dr. Moran's opinion but observed it was consistent with Dr. McFarland's opinion.

### A. The ALJ should re-examine Aseme's RFC in light of the Eleventh Circuit's holding in *Schink.*

The ALJ issued her decision before the Eleventh Circuit's decision in *Schink v. Commissioner of Social Security*, 935 F.3d 1245 (11th Cir. 2019). In *Schink*, the court remanded a finding that the claimant was not disabled due to bipolar disorder. *Id.* The court held the ALJ erred at the third step of the evaluation process in not considering the episodic nature of bipolar disorder, noting the claimant's "failure to maintain consistent treatment was much more a symptom of his disorder . . . than a sign of its mildness." *Id.* at 1267. Following *Schink*, the court then remanded a case in which the ALJ found the bipolar claimant was not disabled, instructing the ALJ to weigh the evidence considering *Schink*'s holding. *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042 (11th Cir. 2020). In *Samuels*, the claimant objected to the determinations made at the fourth and fifth steps. While the court did not opine on the claimant's step four arguments, it held the hypothetical posed to the VE must account for the episodic nature of bipolar disorder. *Id.*

Here, the ALJ's decision does not address the episodic nature of bipolar disorder, except perhaps to discount Aseme's "severe" symptoms as disabling because those symptoms improved when Aseme was compliant with her medication.[5] But the ALJ issued her decision on June 7, 2019, more than two months

---

[5] As discussed in more detail below, the ALJ did not identify which symptoms improved with medication, nor did she discuss what impact those symptoms have on Aseme's ability to work.

before *Schink* was decided on August 27, 2019. As in *Samuels*, because the ALJ did not have the benefit of the Eleventh Circuit's decision in *Schink*, the ALJ should reweigh the evidence of Aseme's disability, considering the episodic nature of bipolar disorder.

### B. The ALJ should address how medication compliance improves Aseme's broader mental functioning.

The ALJ found Dr. Callahan's opinion[6] was "partially persuasive, as treatment notes indicate that the claimant experiences severe symptoms of bipolar disorder when she stops taking her medications, but improves when she resumes her medications as prescribed." (Doc. 21 at 12; Tr. at 21).[7] Aseme objects to this finding because Dr. Callahan's opinion does not provide different limitations when Aseme is taking medication and when she is not.

The ALJ does not identify the "severe" symptoms that improve with medication, but she specifically cites Dr. Callahan's discharge notes in which Dr. Callahan described the effect of medication on Aseme's symptoms during an

---

[6] Of the three medical opinions, Dr. Callahan's was the only one that identified marked or extreme limitations in any of Aseme's abilities. (Tr. at 564-565).

[7] For DIB applications filed after March 27, 2017, new regulations adopted by the Social Security Administration apply. *See Miller v. Kijakazi*, No. 20-656-GMB (N.D. Ala. *entered* Sept. 14, 2021), Doc. 16 at 11. The previous version of the regulations incorporated the treating physician rule, which attributed more weight to the opinions of treating sources in the absence of certain circumstances. *Id.* The current regulations eliminate the hierarchy of medical opinions and the treating physician rule. *See id.*; 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Under the new regulatory regime, an ALJ should focus on the persuasiveness of an opinion by analyzing its supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

inpatient stay. In the discharge notes, Dr. Callahan observed that medication improved Aseme's sleeping patterns, mania with grandiose delusions, and agitation. (Tr. at 454-56). A review of Dr. Callahan's other treatment notes similarly reflects Aseme's medication improved symptoms of mania, insomnia, and psychosis. (Tr. at 532-563). The ALJ also cites Dr. Callahan's findings of "mostly normal mental status examinations when [Aseme] is compliant with medication," but a review of the cited records shows that the "mostly normal mental status" is summarily described in the treating notes as "no psychosis," "stable," "improved, stable," "cooperative, nonsuicidal" and "cooperative, appropriate affect and thought." (Tr. at 494, 505, 518, 530, 532, 534, 544-46, 548-50). It is wholly unclear whether these very brief descriptors are assessing an improvement in Aseme's "severe" symptoms of psychosis, mania, and paranoia or an improvement in the moderate impairments to Aseme's broader mental functioning that the ALJ found at the third step.

Aseme's disability claim is not based on her symptoms of mania, psychosis, and insomnia, however; instead, she claims her bipolar disorder affects her memory, concentration, and ability to complete tasks. (Tr. at 183). More severe symptoms are of course reflected in the record, but they are not the heart of Aseme's disability claim. The ALJ did not discuss what evidence in the record supported a finding that Aseme's medication compliance improved her broader mental functioning, namely her ability to: (1) understand, remember, and apply information; (2) concentrate,

persist, and maintain pace; (3) adapt and manage herself; and (4) interact appropriately with supervisors and co-workers. (*See* Tr. at 18-19).

Furthermore, the court cannot locate substantial evidence in the record to support a conclusion that Aseme's medication compliance improved her broader mental functioning. Neither Dr. Moran nor Dr. McFarland say much on this topic. Dr. Moran notes Aseme's "ongoing stability is dependent also on [her] compliance with treatment." (Tr. at 68). While the ALJ stated that Dr. McFarland found moderate limitations "when [Aseme] was compliant with prescribed medications," Dr. McFarland does not link Aseme's medication compliance to his assessment of her limitations. He does observe, however, that Aseme "is at risk for future episodes and will need to remain in regular outpatient mental health treatment to mitigate the potential need for additional inpatient stays" and that "she will likely continue to experience interruptions in her capacity to maintain employment." (Tr. at 485).

The ALJ did not sufficiently explain her conclusion that Dr. Callahan's opinion of Aseme's broader mental functioning should be discounted based solely on Dr. Callahan's observations that medication improved Aseme's mania, psychosis, and insomnia. On remand, the ALJ should address this issue.

### C. The ALJ should address whether Aseme is limited in her ability to interact with supervisors in determining Aseme's RFC.

At the third step, the ALJ found Aseme was moderately limited in interacting with others, and she specifically cited Dr. McFarland's opinion that Aseme was

moderately limited in her ability to respond appropriately to supervision.[8] (Tr. at 19). Aseme complains the RFC did not account for any limitations on her ability to interact with supervisors, even though both Dr. Moran and Dr. McFarland found she was limited in this area. The Commissioner does not address this argument, except to state that "substantial evidence supports the Commissioner's RFC finding and corresponding hypothetical question to the VE." (Doc. 24-1 at 42).

On one hand, Aseme indicated she gets along "very well" with authority figures. (Tr. at 184). On the other hand, all three physicians opined that Aseme had some impairment in her ability to interact with supervisors. Dr. Moran opined that Aseme is "[m]oderately limited" in her "ability to accept instructions and respond appropriately to criticism from supervisors." (Tr. at 71). Dr. McFarland "anticipate[d] . . . moderate impairment in [Aseme's] ability to respond appropriately to supervision, coworkers, and work pressures in a work setting." (Tr. at 485). And Dr. Callahan indicated Aseme had a "marked" impairment in her ability to interact appropriately with supervisors. (Tr. at 565). In her decision, the ALJ referenced only Dr. McFarland's opinion that Aseme is moderately limited in her ability to respond

---

[8] The ability to respond appropriately to supervision is a basic work activity. *See* 20 C.F.R. § 416.922(b)(5) (listing basic work activities as including "[r]esponding appropriately to supervision, co-workers and usual work situations"); 20 C.F.R. § 416.945(c) (noting that assessment of mental abilities to determine RFC includes whether there is a limited ability "in carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressure in a work setting" which may reduce the claimant's ability to perform other work).

appropriately to supervision in determining that Aseme's impairments are not severe; however, this impairment was not incorporated into the RFC or the questions posed to the VE. "Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC." *Schink*, 935 F.3d at 1268. On remand, the ALJ should evaluate and explain whether and to what extent Aseme can interact with supervisors as a component of her RFC.

### D. The ALJ should address projected absenteeism in determining Aseme's RFC.

Aseme's RFC does not account for projected absenteeism even though all three medical opinions referenced some expectation that Aseme's illness would impact her attendance, and none of their opinions were linked to Aseme's medication compliance. Dr. Moran opined that Aseme would likely miss 1-2 days of work each month because of her psychiatric symptoms. (Tr. at 70). Dr. McFarland indicated that Aseme was at risk for future episodes and would need to remain in regular outpatient mental health treatment to mitigate the potential need for additional inpatient stays. (Tr. at 485). He also opined that Aseme would likely continue to experience interruptions in her capacity to maintain employment. (*Id.*). Dr. Callahan opined Aseme was not capable of full-time work. (Tr. at 565).

Despite all three physicians referencing an expectation of absenteeism, the ALJ did not address this potential impairment when determining Aseme's RFC. This is problematic given the testimony of the VE:

Q:      What would be an unacceptable level of, I'm sorry, what would be work adequate attendance for the jobs that you gave an answer to the Judge's first hypothetical?

A:      An individual can be absent up to one day per month on an ongoing basis. If the absenteeism rises to two days per month that persists over a three-month period consecutively, then that would eliminate all employment.

(Tr. at 44).

As in *Samuels*, the record here reflects absenteeism is a potential limitation caused by Aseme's bipolar disorder. *See Samuels*, 959 F.3d at 1047. The ALJ may have concluded that Aseme's absenteeism would not rise to the level that would eliminate all employment. But because the ALJ is silent on this issue, the court cannot determine what conclusion the ALJ made or whether that conclusion was supported by substantial evidence. *See Schink,* 935 F.3d at 1269 (holding an ALJ's failure to provide a reviewing court with sufficient reasoning requires reversal). On remand, the ALJ should reconsider the evidence and make a determination on this point and, if necessary, include or otherwise implicitly account for Aseme's impairments in her hypothetical to the VE. *See id.* at 1047.

### E. The ALJ should address the consistency and supportability of all medical opinions.

As discussed above, the ALJ discounted Dr. Callahan's opinion because Dr. Callahan's notes reflected that medication improved Aseme's symptoms of mania, psychosis, and insomnia. But the ALJ did not address the consistency or

16

supportability of Dr. Callahan's opinion before discounting it. In fact, the ALJ made no findings about the supportability of any of the medical opinions. She did note that the opinions of Dr. McFarland and Dr. Moran were consistent, but this is to be expected, given that Dr. Moran considered Dr. McFarland's evaluation of Aseme in her own evaluation.

Under the new regulations, the most important factors in evaluating the persuasiveness of medical opinions are supportability and consistency. *See* 20 C.F.R. 404.1520(c). Here, the ALJ addressed the consistency of two medical opinions but did not address the supportability of any of the opinions. On remand, the ALJ should address both the supportability and consistency of all medical opinions when assigning their weight.

### F. The ALJ's failure to specifically incorporate Aseme's reasoning level into her RFC is harmless error.

Aseme believes that because the ALJ noted Dr. Moran's opinion was consistent with the record, Dr. Moran's limitation of "short simple instructions" should have been incorporated into Aseme's RFC. According to Aseme, a limitation to both short and simple instructions would have reduced her Dictionary of Occupational Titles ("DOT") reasoning level from level two to level one, thereby impacting the jobs available to her. (Doc. 21 at 20). Again, the Commissioner does not address this argument, other than to summarily assert that substantial evidence supports the Commissioner's decision.

17

At step three, the ALJ determined Aseme was moderately limited in understanding, remembering, or applying information. The RFC, however, does not explicitly incorporate this limitation but, instead, simply limits Aseme to unskilled work. Likewise, the hypothetical posed to the VE referenced only unskilled work. The VE testified that Aseme could perform three unskilled positions: dishwasher, janitor, and dietary aide. (Tr. at 23). Dishwasher and janitor each have a DOT reasoning level of two, while a dietary aide requires a DOT reasoning level of three. *Dictionary of Occupational Titles*, §§ 318.687-010, 381.687-018, and 319.677-014.

Reasoning level three requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*, app. C. Reasoning level two requires an individual to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* In contrast, reasoning level one requires the individual to [a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.*

In 2021, the Eleventh Circuit discussed the apparent conflict between level one and level two of the DOT reasoning levels where a claimant's RFC has a

limitation about both length (short) and complexity (simple):

> The primary difference between levels one and two is the *length* of the instructions—not the complexity. While level one specifies that the instructions must be "simple," level two similarly specifies that they must be "uninvolved." . . . Accordingly, the difference between levels one and two lies in the *length* of the instructions, with level one being limited to one- or two-step instructions, and level two not being limited in length.

*Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021). The court specifically found there is no apparent conflict between a "limitation to following simple instructions and positions that require the ability to follow 'detailed but uninvolved' instructions." *Id.* at 1320. The court also noted that "'detailed' indicates length rather than complexity." *Id.* at 1323. The court found no conflict between a claimant who had the ability to "understand, carry-out, and remember simple instructions" and identified positions with a reasoning level of two. *Id.*

Here, the VE identified two jobs with a reasoning level two but none with reasoning level one. Thus, the question is whether there is substantial evidence that Aseme's RFC could have incorporated reasoning level two ("simple instructions") as opposed to reasoning level one ("short, simple instructions").

Dr. Moran found Aseme was not significantly limited in her ability to carry out very short and simple instructions but moderately limited in her ability to carry out detailed instructions. (Tr. at 70). Dr. Moran explained Aseme "would be expected to understand, remember, and carry out short simple instructions and tasks

but would likely have difficulty with more detailed tasks and instructions." (Tr. at 70). Dr. Callahan found mild limitations in Aseme's ability to understand and remember simple instructions and to carry out simple instructions and marked limitations in her ability to understand and carry out complex instructions. (Tr. at 564). Dr. McFarland found mild to moderate limitations in Aseme's ability to understand, carry out, and remember simple instructions. (Tr. at 485). The ALJ found Dr. McFarland's opinion on this matter persuasive because it was mostly consistent with Dr. Moran's. (Tr. at 21).

While all three medical opinions discussed limitations in Aseme's ability to carry out instructions, only Dr. Moran referenced instructions that were both simple *and* short. The ALJ also noted that Aseme reported she could follow instructions very well. (Tr. at 20, 183). Thus, the record contains substantial evidence suggesting Aseme could follow simple instructions, corresponding to a reasoning level of two.

As discussed above, the ALJ relied on the VE's testimony that Aseme could perform three unskilled positions: dishwasher, janitor, and dietary aide. Dishwasher and janitor each have a DOT reasoning level of two, while a dietary aide requires a DOT reasoning level of three. Neither the ALJ nor the VE addressed the level three reasoning level required in the position of dietary aide. But even if Aseme could not work as a dietary aide, the VE identified two other positions Aseme could perform at reasoning level two—dishwasher, of which approximately 559,886 jobs exist in

the national economy, and janitor, of which approximately 2,101,810 jobs exist in the national economy. The ALJ identified more than 2.6 million jobs that Aseme could perform at reasoning level two, which is substantial evidence to support the ALJ's conclusion that there are a sufficient number of jobs in the national economy that Aseme can perform. *See Valdez*, 808 F. App'x at 1010. Thus, any error in the ALJ's failure to explicitly incorporate Aseme's reasoning level into the RFC was harmless. *See id.*

## V.    Conclusion

Based on the foregoing, the ALJ's decision is not supported by substantial evidence.   Accordingly, this matter will be reversed and remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**DONE** this 25th day of March, 2022.

*Staci G. Cornelius*
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE